IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-588

No. COA22-95

Filed 6 September 2022

Durham County, No. 17-CVS-004551

LENNARD BARTLETT, SR. ADMINISTRATOR OF THE ESTATE OF MARY SUSAN WHITE BARTLETT, Plaintiff,

v.

ESTATE OF JEFFREY L. BURKE; AIR METHODS CORPORATION; AIRBUS HELICOPTERS DEUTSCHLAND, GMBH; AIRBUS HELICOPTERS, INC.; SAFRAN HELICOPTER ENGINES; AND SAFRAN HELICOPTER ENGINES USA, INC., Defendants.


KASEY HOBSON HARRISON, EXECUTRIX OF THE ESTATE OF KRISTOPHER RAY HARRISON, Plaintiff

v.

ESTATE OF JEFFREY L. BURKE; AIR METHODS CORPORATION; AIRBUS HELICOPTERS DEUTSCHLAND, GMBH; AIRBUS HELICOPTERS, INC.; SAFRAN HELICOPTER ENGINES; AND SAFRAN HELICOPTER ENGINES USA, INC., Defendants.


Appeal by defendants from orders entered 13 September 2021 by Judge David L. Hall in Durham County Superior Court. Heard in the Court of Appeals 9 August 2022.

> *Robb & Robb LLC, by Gary C. Robb, admitted pro hac vice, Anita Porte Robb, admitted pro hac vice, and Brittany Sanders Robb, admitted pro hac vice, and Ward and Smith P.A. by Christopher S. Edwards for plaintiff-appellees Lennard Bartlett, Sr. Administrator of the Estate of Mary Susan White Bartlett*

*and Kasey Hobson Harrison, Executrix of the Estate of Kristopher Ray Harrison.*

*Pangia Law Group, by Amanda C. Dure and Joseph L. Anderson, and Mast, Mast, Johnson, Wells & Trimyer, PA, by Charles D. Mast and Nichole G. Booker for cross claimant-appellee the Estate of Jeffrey L. Burke.*

*Crouse Law Offices by James T. Crouse for plaintiff-intervenor-appellee Robert Sollinger.*

*Ellis & Winters LLP, by Alex J. Hagan and Kelly Margolis Dagger, and Wilson Elser Moskowitz Edelman & Dicker, LLP by Kathryn A. Grace and William J. Katt, admitted pro hac vice, for defendants-appellees Estate of Jeffrey L. Burke and Air Methods Corporation.*

*Moore & Van Allen PLLC, by Christopher D. Tomlinson and Anthony T. Lathrop, and Locke Lord LLP by Eric C. Strain, admitted pro hac vice, and Paul E. Stinson, admitted pro hac vice, for defendant-appellant Airbus Helicopters Deutschland GmbH.*

*Nelson Mullins Riley & Scarborough LLP, by D. Martin Warf and William M. Starr, and Jackson Walker LLP, by Stuart B. Brown, Jr., admitted pro hac vice, for defendant-appellant Safran Helicopter Engines.*

TYSON, Judge.

¶ 1    Safran Helicopter Engines ("SHE") and Airbus Helicopters Deutschland GmbH ("AHD") appeal from orders entered denying their motions to dismiss for lack of specific personal jurisdiction. We reverse and remand.

## I.    Background

¶ 2    At approximately 11:08 a.m. on 8 September 2017, a Eurocopter Deutschland GmbH model MBB-BK117 C2 helicopter ("Helicopter") took off from the helipad at

Sentara Albemarle Regional Medical Center in Elizabeth City with a flight plan bound for the helipad located at Duke University Hospital in Durham. The Helicopter's manufacturer designated the unit as serial number 9474, and it was assigned a Federal Aviation Administration ("FAA") registration number of N146DU. Air Methods Corporation operated the Helicopter for the owner, Duke University Health Systems, Inc., specifically as a medevac flight for Duke Life Flight.

¶ 3 The Helicopter pilot commenced a turn to the south at approximately 11:16 a.m. A minute later, the Helicopter's computer transmitted flight data stating the aircraft was flying at an altitude of 1,200 feet above mean sea level with a ground speed of 75 knots or 86.3 miles per hour. Witnesses on the ground later reported they observed smoke trailing from behind the Helicopter while in flight. Witnesses also reported the Helicopter appeared to be hovering and not traveling forward. The Helicopter quickly descended and impacted a shallow turf drainage pathway about 30 feet wide and 2,000 feet long located between two fields of eight-foot-tall grass on a wind turbine farm in Hertford. The Helicopter landed upright, but the cabin collapsed downward upon impact and was partially consumed by post-impact fire.

¶ 4 Onboard the Helicopter was pilot-in-charge, Jeffrey L. Burke; two flight nurses: Kristopher R. Harrison and Crystal Sollinger; and patient, Mary Susan White Bartlett. All individuals aboard perished in the crash. Burke was employed by Air Methods Corporation and Harrison and Sollinger were employed by Duke University

Health Systems, Inc.

¶ 5      The National Transportation Safety Board ("NTSB") investigated the crash. Examination of the Helicopter's wreckage revealed the second engine's rear turbine shaft bearing exhibited dislocation consistent with overheating and lack of lubrication, and the bearing roller pins were worn down to the surface of the bearing race. The FAA issued a Special Airworthiness Information Bulletin ("SAIB") SW-18-04 alerting owners, operators, maintainers, and certified repair facilities of the MBB-BK117 C2 helicopters of possible blockages of the engine oil drainage system. The SAIB SW-18-04 bulletin references an emergency landing by a MBB-BK117 C2 helicopter in Sioux Falls, South Dakota on 26 January 2017 resulting in no fatalities and the 8 September 2017 crash of this Helicopter. The SAIB noted "block drain line may, under certain circumstances, present a risk for an engine fire and/or inflight shutdown of the affected engine." SAIB SW-18-04 recommended operators of MBB-BK117 C2 helicopters perform inspections of the bearing lines and drain collector at a maximum of 100 hours of time-in-service.

¶ 6      The Helicopter at issue was equipped with two Arriel 1E2 jet turbine engines (the "Engines") manufactured by Turbomeca S.A.S, which company was purchased by Safran SA in 2005 and rebranded as SHE in 2016. SHE is a wholly-owned subsidiary of Safran SA, a French public limited company, which is not a party to this action. SHE's principal place of business is located in Paris, France, and it maintains

a place of business in Bordes, France, where it manufactured the Engines at issue. SHE sold and delivered the Engines to Eurocopter Deutschland GmbH located in Germany in December 2010. SHE sells and delivers Arriel engines to AHD in both France and Germany.

¶ 7        Safran Helicopter Engines USA is a Delaware corporation with its principal place of business located in Grand Marie, Texas. Safran Helicopter Engines USA is a wholly-owned subsidiary of Safran USA, a Delaware corporation with its principal place of business located in Irving, Texas. Safran USA is also a wholly owned subsidiary of Safran S.A. Safran USA fulfills orders for engines, provides technical support to customers, and markets these services and products within the United States.

¶ 8        Safran S.A. and Safran USA chartered Turbomeca Manufacturing, a Delaware Corporation, in July 2007. Turbomeca Manufacturing, Inc. was later renamed Turbomeca Manufacturing LLC. Turbomeca Manufacturing, Inc. manufactured helicopter engine components. Turbomeca Manufacturing, Inc. opened a manufacturing facility in Monroe. Safran purchases engine components from Turbomeca Manufacturing LLC for use in engines it manufactured in France.

¶ 9        AHD is formerly known as Eurocopter Deutschland GmbH. Eurocopter Deutschland GmbH was renamed AHD in 2014. AHD is a company engaged in the design, manufacture, testing, inspection, assembly, labeling, advertising, sale,

promotion, and distribution of helicopters, with its principal place of business located in Germany. AHD sourced two helicopter components from companies located in North Carolina.

¶ 10 Airbus Helicopters, Inc. is a Delaware corporation with its principal place of business in Texas. Airbus Helicopters, Inc. is the successor to American Eurocopter Corporation. In 2009, Eurocopter entered a Distribution and Service Center Agreement with American Eurocopter Corporation, which was assigned to successor entity Airbus Helicopters, Inc.

¶ 11 The Distribution and Service Center Agreement defines their relationship and granted American Eurocopter Corporation the exclusive right to sell new Eurocopter helicopters within the United States. American Eurocopter Corporation obligated itself to promote, market, and support products it purchased from Eurocopter for resale within the United States.

¶ 12 In 2011, Eurocopter sold and delivered the Helicopter at issue to American Eurocopter Corporation. This transaction occurred in Germany. The purchase agreement is governed by German law. American Eurocopter Corporation was responsible for importing the Helicopter into the United States. The Helicopter was delivered in a standard configuration.

¶ 13 American Eurocopter Corporation imported and sold the Helicopter to Duke University Health System, Inc. in Texas also in a standard configuration. American

Eurocopter Corporation agreed to provide Duke University Health System, Inc. as the Helicopter's owner with technical publications, pilot training, and maintenance training.

¶ 14 AHD was made aware Air Methods was operating the Helicopter as an EMS medevac Duke Life Flight on behalf of Duke University Health System, Inc. AHD was also made aware of approximately two dozen other similar helicopter operators in North Carolina. In 2017, Air Methods asked Airbus Helicopters, Inc. a technical question about the Helicopter that required Airbus Helicopters, Inc. to obtain information from AHD, which then responded to Air Methods. The subject of this inquiry is not at issue in the accident involving the Helicopter.

¶ 15 Lennard Bartlett, Sr., in his capacity as administrator of the estate of Mary Susan White Bartlett, and Kasey Hobson Harrison, in her capacity as executrix of the estate of Kristopher Ray Harrison, each filed negligence and breach of warranty actions for wrongful death damages against the Estate of Jeffrey L. Burke; Air Methods Corporation; AHD; Airbus Helicopters, Inc.; SHE; and, Safran Helicopter Engines USA, Inc. on 11 December 2017.

¶ 16 Dina Burke, as administrator of the Estate of Jeffrey L. Burke, filed crossclaims against SHE and AHD.

¶ 17 Lennard Bartlett, Sr., in his capacity as administrator of the estate of Mary Susan White Bartlett ("Bartlett Action"), and Kasey Hobson Harrison, in her capacity

as executrix of the estate of Kristopher Ray Harrison ("Harrison Action"), each filed amended complaints. The Estate of Jeffrey L. Burke and Air Methods Corporation answered, asserted affirmative defenses, and cross-claimed for indemnity against SHE and AHD.

SHE moved to dismiss the Bartlett and Harrison Actions on 15 June 2018. SHE also moved to dismiss the indemnity claims filed by the Estate of Jeffrey L. Burke and Air Methods Corporation. Both the Bartlett and Harrison Actions were consolidated by order on 14 August 2018.

AHD moved to dismiss the Bartlett and Harrison Actions for lack of personal jurisdiction on 21 August 2018 and 11 September 2018, respectively. AHD moved to dismiss the crossclaim of the Estate of Jeffrey L. Burke on 6 May 2019.

On 1 October 2018, Robert Sollinger, in his capacity as executor of the estate of Crystal Sollinger, moved to intervene and file a complaint, which was granted by order entered on 13 November 2018. SHE and AHD moved to dismiss the Sollinger action for lack of personal jurisdiction on 6 May 2019. The trial court entered orders denying SHE's and AHD's motions to dismiss under Rule 12(b)(2) of the North Carolina Rules of Civil Procedure and holding North Carolina had personal jurisdiction over SHE and AHD by orders entered 13 September 2021. SHE and AHD appeal.

## II. Jurisdiction

¶ 21    SHE and AHD correctly concede this appeal is interlocutory but assert their substantial rights will be impacted without immediate review. *See* N.C. Gen. Stat. § 7A-27(b)(3)(a) (2021).

¶ 22    "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990).

¶ 23    Our Supreme Court has held:

> A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.

*Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950) (internal citations omitted).

¶ 24    "This general prohibition against immediate [interlocutory] appeal exists because [t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Harris v. Matthews*, 361 N.C. 265, 269, 643 S.E.2d 566, 568 (2007) (citation and internal quotations omitted).

¶ 25    Our General Statutes recognize a limited right to an immediate appeal from

an interlocutory order denying a motion to dismiss for lack of personal jurisdiction. *See* N.C. Gen. Stat. § 1-277(b) (2021) ("Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant[.]"). The denial of a "motion[] to dismiss for lack of personal jurisdiction affect[s] a substantial right and [is] immediately appealable." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 257-58, 625 S.E.2d 894, 898 (2006) (citations omitted).

¶ 26 This exception is narrow: "the right of immediate appeal of an adverse ruling as to jurisdiction over the person, under [N.C. Gen. Stat. § 1-277(b)], is limited to rulings on 'minimum contacts' questions, the subject matter of Rule 12(b)(2)." *Love v. Moore*, 305 N.C. 575, 581, 291 S.E.2d 141, 146 (1982). This appeal is properly before this Court.

### III. Issue

¶ 27 SHE and AHD argue the trial court erred in asserting and holding it had acquired personal jurisdiction over them.

### IV. Personal Jurisdiction

¶ 28 North Carolina applies a two-step analysis to determine whether a non-resident defendant is subject to *in personam* jurisdiction. *See Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986) (citation omitted). "First, jurisdiction must be authorized by our 'long-arm' statute, N.C. Gen. Stat. § 1-

75.4. Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Cambridge Homes of N.C. Ltd. P'ship v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 411, 670 S.E.2d 290, 295 (2008) (internal citations and quotation marks omitted).

¶ 29     The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a non-resident defendant. *See International Shoe Co. v. Washington*, 326 U.S. 310, 315 90 L. Ed. 95, 101 (1945). The Supreme Court of the United States recognizes "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. __, __, 209 L. Ed. 2d 225, 233 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 180 L. Ed. 2d 796, (2011)).

¶ 30     "The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of" the forum state's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 85 L. Ed. 2d 528, 542 (1985) (internal citation omitted). This "'purposefully avails' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts[.]" *Id.* (citation omitted).

¶ 31        The basis of the suit must "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. __, __, 198 L. Ed. 2d 395, 403 (2017) (citation omitted); *see Ford Motor Co.*, 592 U.S. at ___, 209 L. Ed. 2d at 234 (citations omitted); *Burger King*, 471 U.S. at 472, 85 L. Ed. 2d at 541 (citation omitted); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 411 (1984) (citations omitted); *International Shoe*, 326 U.S. at 319, 90 L. Ed. at 104.

## A. Standard of Review

¶ 32        "When jurisdiction is challenged, plaintiff has the burden of proving that jurisdiction exists." *Stetser v. TAP Pharm. Prods., Inc.*, 162 N.C. App. 518, 520, 591 S.E.2d 572, 574 (2004) (citation omitted).  As noted above, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at  475, 85 L. Ed. 2d at 542 (citation omitted).

¶ 33        "The standard of review [on appeal] of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record[.]" *Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011) (citation and quotation marks omitted).  "We review *de novo* the issue

of whether the trial court's findings of fact support its conclusion of law that the court has personal jurisdiction over a defendant." *Id.* (citation omitted).

## B. Minimum Contacts

¶ 34        North Carolina's Long Arm Statute, N.C. Gen. Stat. § 1-75.4 (2021), grants North Carolina's courts specific personal jurisdiction "over defendant[s] to the extent allowed by due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676 ,231 S.E.2d 629, 631 (1977). The two-step inquiry from *Tom Togs* "collapses into the question of whether" the defendant moving to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) "has the minimum contacts with North Carolina necessary to meet the requirements of due process." *Sherlock v. Sherlock*, 143 N.C. App. 300, 303, 545 S.E.2d 757, 760 (2001) (citations and quotation marks omitted).

### *1. Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*

¶ 35        The Supreme Court of the United States recently addressed the issue of a state court's authority under the Due Process Clause of the Fourteenth Amendment to exercise personal jurisdiction over an out-of-state defendant in *Ford Motor Co.*, 592 U.S. at  __, 209 L. Ed. 2d  at 232. In *Ford*, the action arose out of two separate automobile accidents occurring in Montana and Minnesota involving vehicles manufactured by Ford Motor Company. *Id.* Ford Motor Company is incorporated in Delaware and headquartered in Michigan. *Id.* at __, 209 L. Ed. 2d at 231.

¶ 36        Ford Motor Company conceded "it does substantial business in" both states,

"that it actively seeks to serve the market for automobiles and related products" in both states, and "it ha[d] purposefully avail[ed] itself of the privilege of conducting activities in both places." *Id.* at __, 209 L. Ed. 2d at 235 (citation and quotation marks omitted). Ford Motor Company maintained and argued a strict causal relationship was required to be shown between the injury and conduct.

¶ 37        Ford Motor Company asserted the required link had to "be causal in nature" and "jurisdiction attaches only if the defendant's forum conduct *gave rise* to the plaintiff's claims." *Id.* (quotation marks omitted).

¶ 38        The Supreme Court of the United States held:

> None of our precedents ha[ve] suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. *That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum.* But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.

*Id.* at __, 209 L. Ed. 2d at 235-36 (last emphasis supplied, citations omitted).

¶ 39        The Supreme Court's majority opinion drew the following example analyzing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 297, 62 L. ed. 2d 490 (1980):

[I]ndeed, this Court has stated that specific jurisdiction attaches in cases . . . when a company like Ford serves a market for a product in the forum State and the product malfunctions there. In *World-Wide Volkswagen*, the Court held that an Oklahoma court could not assert jurisdiction over a New York car dealer just because a car it sold later caught fire in Oklahoma. But in so doing, we contrasted the dealer's position to that of two other defendants—Audi, the car's manufacturer, and Volkswagen, the car's nationwide importer (neither of which contested jurisdiction):

> "[I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."

Or said another way, if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York. For, the Court explained, a company thus "purposefully avail[ing] itself" of the Oklahoma auto market "has clear notice" of its exposure in that State to suits arising from local accidents involving its cars. And the company could do something about that exposure: It could "act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are [still] too great, severing its connection with the State."

*Id.* at __, 209 L. Ed. 2d at 236-37 (citations omitted).

The Supreme Court concluded: "Ford had systematically served a market in

Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id.* at __, 209 L. Ed. 2d at 238 (citation omitted).

¶ 41 The majority's opinion in *Ford*, does not explain how a large national, ubiquitous company could not be subject to jurisdiction in all courts, however, it cites with approval and does not overrule its decision in *Goodyear*. In *Goodyear*, the Supreme Court of the United States found North Carolina could not hale Goodyear Dunlop Tires Operations, S.A. into a North Carolina court, when the allegedly defective tire was manufactured in Turkey and purportedly malfunctioned in France. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 918, 180 L. Ed. 2d at 802.

¶ 42 The majority's opinion's "assortment of nouns" in *Ford* does not establish outer limits for lower courts to follow when evaluating whether due process protections prohibit a court from establishing specific personal jurisdiction over a non-forum defendant. *Ford Motor Co.*, 592 U.S. at __, 209 L. Ed. 2d at 245 (Gorsuch, J., concurring). Justice Gorsuch's concurrence asserts the majority opinion's holding may affect lower court's evaluation of specific personal jurisdiction after *Ford*:

> Where this leaves us is far from clear. For a case to "relate to" the defendant's forum contacts, the majority says, it is enough if an "affiliation" or "relationship" or "connection" exists between them. But what does this assortment of nouns *mean*? Loosed from any causation standard, we are

left to guess. The majority promises that its new test "does not mean anything goes," but that hardly tells us what does. In some cases, the new test may prove more forgiving than the old causation rule. But it's hard not to wonder whether it may also sometimes turn out to be more demanding. Unclear too is whether, in some cases like that, the majority would treat causation and "affiliation" as alternative routes to specific jurisdiction or whether it would deny jurisdiction outright.

*Id.* (internal citations omitted).

¶ 43        This Court's post-*Ford* opinions in *Cohen v. Cont'l Motors, Inc.*, 2021-NCCOA-449, 279 N.C. App. 123, 864 S.E.2d 816 (2021) and *Miller v. L.G. Chem, Ltd.*, 2022-NCCOA-55, 281 N.C. App. 531, 868 S.E.2d 896 (2022) analyze prior specific personal jurisdiction precedents. *Cohen* and *Miller* are instructive and set precedential goalposts and boundary lines to determine whether sufficient or insufficient jurisdictional contacts are shown and proven.

### 1. *Cohen v. Cont'l Motors, Inc.*

¶ 44        In *Cohen*, the plaintiffs' aircraft starter adapter failed, causing a loss of oil pressure and ultimate failure of the aircraft's engine. *Cohen*, 2021-NCCOA-449 at ¶ 2, 279 N.C. App. at 125, 864 S.E.2d at 818. The plane crashed and both owners/pilots perished. *Id.* Continental Motors, Inc., the engine's manufacturer, is domiciled in Delaware, made nearly 3,000 sales, earning almost $4 million from North Carolina-based consumers. *Id.* at ¶¶ 3-4, 279 N.C. App. at 125, 864 S.E.2d at 819. Continental Motors worked closely with fourteen paid North Carolina maintenance providers and

paid subscribers from its electronic subscription account for manuals and technical support. *Id.* at ¶ 6, 279 N.C. App. at 126, 864 S.E.2d at 819.

### 2. *Miller v. L.G. Chem, Ltd.*

¶ 45    "LG Chem manufactures and sells lithium-ion batteries which are designed and sold solely to corporate and industrial businesses for inclusion in battery packs used for specified products" not for use in the vape devices for which they were inserted in the underlying action. *Miller*, 2022-NCCOA-55 at ¶ 23, 281 N.C. App. at 537, 868 S.E.2d at 901. LG Chem never sold battery or battery components to North Carolina-based companies. *Id.* at ¶ 26, 281 N.C. App. at 538, 868 S.E.2d at 902. This Court held the defendants in *Cohen* could be haled into North Carolina's courts, but the defendants in *Miller* could not.

### C. Analysis

¶ 46    This Court has held: "The mere fact that [a defendant] was 'connected' to the manufacture and distribution of [a product] is not sufficient to support a conclusion that [the defendant] purposefully availed itself of North Carolina jurisdiction by injecting its products into the stream of commerce." *Id.* at ¶ 19, 281 N.C. App. at 536, 868 S.E.2d at 901 (citation omitted).

¶ 47    Our Supreme Court recently summarized the Supreme Court of the United States' prerequisites for a forum to exercise personal jurisdiction under a stream of commerce theory in *Mucha v. Wagner*, 2021-NCSC-82, 378 N.C. 167, 861 S.E.2d 501

(2021):

> These cases have drawn a distinction between conduct targeted at states generally and conduct targeted at the specific forum state seeking to exercise jurisdiction over the defendant. Thus, the Court has held that a forum state may exercise personal jurisdiction over a defendant who delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State, but not over a defendant who directed marketing and sales efforts at the United States without engaging in conduct purposefully directed at the forum state.

*Id.* at ¶ 15, 378 N.C. at 173, 861 S.E.2d at 507-08 (citations, alterations, and internal quotation marks omitted).

¶ 48 Neither Bartlett, Harrison, nor any of the plaintiffs make any arguments to "pierce the corporate veil" of AHD or SHE or assert either entity is an "alter ego" of the United States- based defendants to AHD and SHE. SHE has no relationship with Safran Helicopter Engines USA. AHD has no ownership interest in Airbus Helicopters, Inc. The parties' relationship is governed by the distributor agreement. Neither Airbus SE nor Safran S.A., the corporate parents, of AHD and SHE are parties in this action. *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330-31 (1985) (lays out elements and factors for a court to consider whether to pierce the corporate veil). *See Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E.2d 570, 575 (1966) ("[A] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus

controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.") (citation omitted).

¶ 49      A federal trial court has held the North Carolina court "would adopt the internal affairs doctrine and apply the law of the state of incorporation" in piercing the corporate veil. *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 349 (M.D.N.C. 1995). However, while not explaining why it used North Carolina law, this Court applied North Carolina law to pierce the corporate veil of a Florida corporation doing business in North Carolina to uphold personal jurisdiction in North Carolina. *See Copley Triangle Assoc. v. Apparel America, Inc.*, 96 N.C. App. 263, 265, 385 S.E2d 201, 203 (1989). The structural and governance integrity of the foreign corporate entities is unchallenged.

### 1.  AHD

¶ 50      AHD argues the trial court erred by finding it "availed itself of the privilege of conducting business in North Carolina through its continuous and deliberate efforts to serve the market here, individually[,]" and that "AHD has continuously and deliberately served the North Carolina market with regard to the Subject Helicopter and similar models."

¶ 51      AHD challenges the following finding of fact:

> 11.  The sales and marketing services AHD *sought and obtained* for the North Carolina market *are contacts* with North Carolina for purposes of this Motion;

(emphasis supplied).

¶ 52   "The labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review." *Westmoreland v. High Point Healthcare Inc.*, 218 N.C. App. 76, 79, 721 S.E.2d 712, 716 (2012) (citation omitted). "As a general rule, however, any determination requiring the exercise of judgment, or the application of legal principles, is more properly classified a conclusion of law. Any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (internal citations and quotation marks omitted). This "findings of fact" is properly characterized and reviewed as a conclusion of law.

¶ 53   AHD also challenges the following conclusions of law:

> 3. Discovery taken in this action fairly demonstrates that at the time AHD manufactured the Subject Helicopter, it knew and intended that the craft would be sold and used in an international market, including the United States and *potentially* North Carolina;
>
> 17. The facts found above demonstrate that AHD delivered the Subject Helicopter *into the stream of commerce* with the expectation it would be purchased and operated anywhere in the United States, specifically to include North Carolina;
>
> 19. In applying controlling law, this Court makes its Conclusions based, without limitation, the facts found that AHD at all times relevant to this action had
>
> > a) an international scope of operations;

b) chose to sell the Subject Helicopter (and similar models) via a nation-wide (sic) exclusive distributor agreement with A[irbus] H[elicopters] I[nc.] that included North Carolina;

c) made no attempt to limit sales to North Carolina;

d) had actual knowledge that the Subject Helicopter was being used as a medical services helicopter in North Carolina for more than seven (7) years prior to the loss complained of;

e) tracked ownership, operation, purpose and hours flown relating to the Subject Helicopter in part to derive benefit from future part sales and repairs;

f) participated in sufficient marketing and sales activity within North Carolina;

21. AHD had actual notice of potential exposure in the North Carolina courts arising from the sale and operation of the Subject Helicopter (and similar models) in North Carolina, and by providing ongoing guidance, instruction, and replacement parts for the continued operation of the Subject Helicopter in North Carolina, both individually and through its exclusive distributor A[irbus] H[elicopters] I[nc.];

(emphasis supplied). We will review these conclusions in our analysis of the underlying motion to dismiss.

¶ 54 The product at issue is a MB-BK117 C2 helicopter and its engines. AHD sells and delivers the helicopter in Germany to Airbus Helicopters Inc., who in turn imports the helicopters into the United States. Once imported into the United States, the helicopters are sold and delivered in Texas to the new owner or end user by Airbus

Helicopters, Inc., a wholly separate entity, and is not a party to this appeal.

¶ 55        Ford Motor Company sold the various vehicles involved in each accident directly to the public through an elaborate local dealer network. Ford Motor Company "advertised, sold, and serviced those two car models in both [forum] States for many years." *Ford Motor Co.*, 592 U.S. at __, 209 L. Ed. 2d at 238. Unlike in *Ford*, AHD does not import nor operate a dealer network within the United States, and only sells and delivers the units in Germany directly to Airbus Helicopters Inc., an exclusive importer.

¶ 56        AHD does provide operator access to a website portal, Keycopter. The data and technical support provided by AHD includes technical publications, maintenance manuals, and technical instructions. AHD provides answers to technical questions regarding the ongoing care and maintenance of their helicopters through Keycopter.

¶ 57        In *Havey v. Valentine*, 172 N.C. App. 812, 816-17, 616 S.E.2d 642, 647-48 (2005), our Court adopted the United States Court of Appeals for the Fourth Circuit's rule for determining whether an internet website can become the basis for the exercise of personal jurisdiction in the forum. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). *ALS Scan, Inc.* adopted the analysis from *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp 1119 (W.D.Pa. 1997).

¶ 58        In *Havey*, this Court held:

> A State may, consistent with due process, exercise judicial
> power over a person outside of the State when that person
> (1) directs electronic activity into the State, (2) with the
> manifested intent of engaging in business or other
> interactions within the State, and (3) that activity creates,
> in a person within the State, a potential cause of action
> cognizable in the State's courts. *Under this standard, a
> person who simply places information on the Internet does
> not subject himself to jurisdiction in each State into which
> the electronic signal is transmitted and received.* Such
> passive Internet activity does not generally include
> directing electronic activity into the State with the
> manifested intent of engaging business or other
> interactions in the State thus creating in a person within
> the State a potential cause of action cognizable in courts
> located in the State. *When a website is neither merely
> passive nor highly interactive, the exercise of jurisdiction is
> determined by examining the level of interactivity and
> commercial nature of the exchange of information that
> occurs.*

*Havey*, 172 N.C. App. at 816-17, 616 S.E.2d at 647-48 (emphasis supplied) (internal

citations, quotation marks, and alterations omitted).

¶ 59        AHD's website, Keycopter, is an interactive informational website.   The

website provides a technical library where subscribers can access instructions.

Unlike the technical website present, in *Cohen*, the record does not disclose whether

AHD charged a subscription for access or generated any revenue from any North

Carolina customers' access.   At oral argument counsel for AHD stated the aircraft

owner's warranty card provided their access to Keycopter.   Unlike the paid

subscription service shown in *Cohen*, this Keycopter portal is not shown to contain a

commercial nature from paid subscriptions. "A passive [w]eb site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction." *ALS Scan, Inc.*, 293 F.3d at 714.

When considering whether AHD's alleged contacts "related to" North Carolina, beyond mere "stream of commerce," AHD has not "purposefully availed" itself of our forum, and these contacts are not sufficient to support the trial court's assertion of specific personal jurisdiction. *Havey*, 172 N.C. App. at 817, 616 S.E.2d 648; N.C. Gen. Stat. § 1-75.4. No evidence tends to show AHD marketed, sold, or delivered its products to North Carolina. Even if true, as the trial court's "stream of commerce" "findings of fact" #2 and #3 assert, the mere manufacture and introduction of a product into the world's "stream of commerce" without "purposeful availment" is insufficient to establish personal jurisdiction in North Carolina. *Burger King Corp.*, 471 U.S. at 474-75, 85 L. Ed. 2d at 542; *Mucha*, 2021-NCSC-82 at ¶ 15, 378 N.C. at 173, 861 S.E.2d at 507-08. The order of the trial court finding and concluding personal jurisdiction exists in North Carolina over AHD is reversed.

### 2. *SHE*

Here, the product at issue is SHE's Arriel 1E2 engines, which powered the Helicopter. The engine is not a consumer product. It is manufactured, marketed, distributed, and sold solely as a component product for helicopters. Like in *Miller*, SHE has never sought nor served a market in North Carolina for standalone

helicopter engines. *Miller*, 2022-NCCOA-55 at ¶ 36, 281 N.C. App. at 540, 868 S.E.2d at 903. SHE never advertised, sold, or distributed any engines for sale to individual users or consumers in North Carolina.

¶ 62 Beyond worldwide "stream of commerce" SHE also has not "purposefully availed" itself of our forum. *Havey*, 172 N.C. App. at 817, 616 S.E.2d at 648; *see* N.C. Gen. Stat. § 1-75.4. These contacts are not sufficient to support the trial court's assertion of specific personal jurisdiction in North Carolina. *Id.* The mere introduction of a product into the "stream of commerce" without "purposeful availment" is insufficient to establish jurisdiction. *Burger King Corp.*, 471 U.S. at 474-75, 85 L. Ed. 2d at 542; *Mucha*, 2021-NCSC-82 at ¶ 15, 378 N.C. at 173, 861 S.E.2d at 507-08; *Miller*, 2022-NCCOA-55 at ¶ 19, 281 N.C. App. at 536, 868 S.E.2d at 901 (citation omitted). The order of the trial court concluding personal jurisdiction exists over SHE in North Carolina is reversed.

## V. Conclusion

¶ 63 Plaintiffs bear the burden of proving jurisdiction. Plaintiffs have failed to show any of these activities by AHD or SHE sufficiently "arise out of *or relate to* the defendant's contacts with the forum." "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co.*, 592 U.S. at __, 209 L. Ed. 2d at 236.

¶ 64 As in *Goodyear*, a foreign entity cannot be haled into North Carolina's courts

because of the presence of even an affiliated American company present in or doing business in the forum. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 918, 180 L.Ed.2d at 802.

¶ 65        This holding is limited to the foreign entity appellants, SHE and AHD, the only entities who appealed. Plaintiff has failed to prove a "causal connection," "purposeful availment," or activities in the forum "related to" the Defendants before us in order to establish personal jurisdiction between North Carolina and AHD and North Carolina and SHE.

¶ 66        The trial court's orders denying AHD's and SHE's Rule12(b)(2) motions are reversed and this cause remanded for entry of dismissal of AHD and SHE. *It is so ordered.*

REVERSED AND REMANDED.

Judges COLLINS and GORE concur.